[No. 33851.   Department One.   January 31, 1957.]

CHARLES POWELL et al., *Appellants*, v. CONTINENTAL BAKING
COMPANY, *Respondent and Cross-appellant*.[1]

*Ward V. Williams*, for appellants.

*Eggerman, Rosling & Williams* and *Henry E. Kastner*,
for respondent and cross-appellant.

[1]Reported in 306 P. (2d) 757.

Schwellenbach, J.—On the afternoon of April 19, 1952, Jane Powell was driving her automobile north on 23rd avenue in Seattle, approaching the intersection with Madison street. She passed a panel delivery truck belonging to Continental Baking Company, which was being driven by Lowell M. Mason, after which she drove back into his lane ahead of him. According to her testimony, the traffic signal light turned yellow while she was about half way down the block; that as she approached the intersection the light turned red and she applied the brakes and stopped; and that all of a sudden the truck bumped into her car from the rear and the impact shoved her across the intersection. Mr. Mason testified that she stopped on the yellow light; that he struck the rear of her car lightly; that when they stopped the truck was about a foot and a half distant from her car; and that they decided to drive across the intersection, park, and talk things over.

This action was commenced, alleging the following damages as a result of defendant's negligence: reasonable hospital expense, $203.35; reasonable medical expense, $325; depreciation in value of automobile, $500; and general damages, $15,000; or a total of $16,028.35. Defendant answered, denying plaintiffs' allegations, and affirmatively alleging contributory negligence; and further, that the plaintiffs were living separate and apart at the time of the action; that they were subsequently divorced; and that the alleged cause of action was the sole and separate property of Jane Powell.

Upon the trial the jury, on November 29, 1955, returned a verdict for the plaintiffs in the sum of three thousand dollars.

Promptly thereafter, and upon retiring to chambers, the trial judge made this memorandum:

"On the issue of liability, the verdict in favor of plaintiff is supported by substantial evidence. On the amount of damages, I think the jury was taken in by a woman who is thoroughly dishonest. Her damage claim, as I view it, is willfully false and fraudulent. Any amount over $500.00, including auto damage, is outrageous."

Motions for judgment n.o.v. and for new trial were made and argued, briefs were submitted, and on March 30, 1956, the trial judge rendered a forty-five page memorandum opinion. Two and one-half pages were devoted to the motion for new trial, and the remainder was devoted to a discussion of Superior Court Rule 16, covering new trials, 34A Wn. (2d) 117, and also as amended, effective July 1, 1954. The discussion was directed to the inclusion of the following in the rule:

"9. That substantial justice has not been done.

"In all cases wherein the trial court grants a motion for a new trial, it shall, in the order granting the motion, give definite reasons of law and facts for so doing."

The trial court then entered this order:

"IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

"CHARLES POWELL AND JANE POWELL,

Plaintiffs,

vs.

CONTINENTAL BAKING CO., a corporation,

Defendant.

No. 467859

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT N.O. V. AND GRANTING DEFEND-ANT'S MOTION FOR NEW TRIAL

"THIS MATTER having come on for trial before the under-signed Judge of the above-entitled court sitting with a jury on November 28 and 29, 1955, all parties being present and represented by their respective attorneys of record, the case having been submitted to the jury, the jury having returned a verdict in favor of plaintiffs in the sum of $3,000.00 and thereafter the defendant having filed its alternative motions for judgment n.o.v. and for a new trial, and said motions having come on regularly for hear-ing before the undersigned Judge, and counsel for both parties having submitted briefs and the court having taken the matter under advisement and having rendered a memo-randum decision denying the motion for judgment n.o.v. but granting the motion for new trial, Now THEREFORE,

"IT IS HEREBY ORDERED that defendant's motion for judg-ment n.o.v. be and it is hereby denied, and the defendant is allowed an exception to this ruling.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that de-

fendant's motion for a new trial be and it is hereby granted on the ground that substantial justice has not been done.

"This order granting a new trial on the above mentioned ground is based upon the following reasons: That the plaintiff, (plaintiff herein referring to Jane Powell—Charles Powell not testifying) in the opinion of this trial court was wilfully false and fraudulent and that any amount over $500.00, including automobile damage, is outrageous; that the court is of the opinion that the plaintiff's alleged injuries and suffering were nonexistent; that this opinion is formed partly on the basis of many little clues and symptoms about her appearance and demeanor which the court is unable to describe in detail other than to say that they were the sort commonly considered in discriminating between the true and the false, and partly upon the entire evidence in the case and its appraisal of the overwhelming weight of the credible testimony; that it is the court's opinion that the jury was deceived because of its lack of experience and discrimination, being below average in both of these respects; that for five jurors the case was their first case; that the court feels the average jury would have detected the lack of substance, if not the entire falsity, of plaintiff's claimed injuries, and would have found either a nominal amount for plaintiff or a verdict for defendant; that the appearance and demeanor of the parties and witnesses and their impact on the jury and its reaction to them can not be captured for the record; that the verdict was against the weight of the evidence and was a miscarriage of justice.

"Plaintiffs are allowed an exception to this order granting the defendant's motion for a new trial.

"DONE IN OPEN COURT this 5th day of April, 1956.

"THEODORE S. TURNER [Signed]"

Judge

Appellants appeal, and respondents cross-appeal.

■ We are not impressed by the trial court's opinion that the jury lacked experience and discrimination. The members were examined *voir dire* as to their qualifications, and by their answers satisfied counsel and the court, at that time, that they were qualified. Neither are we concerned because this was the first case for five of the jurors. The average citizen does not serve more than two or three times as a juror. He or she takes the responsibility very seriously and realizes that, for the time being, he or she is

actually a part of the court. This is especially true of those who are serving for the first time. We are aware of no rule which requires a juror to have served on one or more cases in order to be a competent trier of facts.

Mrs. Powell testified that when the truck hit, her head went back with such force that her hat was knocked off; that she felt faint; that a "real hot flash" went straight up her back; that a lady came and took her to Dr. Lundmark's office and that he sent her to the hospital. She testified:

"Q. What after effects, if any, did you have as a result of the accident? A. Well, in the beginning I had pains. Q. Where were they? A. In the back of my head and neck, and in the lower part or middle part of the back, back about half-way between my shoulders. He gave me codeine, because I know the codeine would make me sick. If I didn't take the codeine, I hurt, and I did. And I was sore. I was just miserable. Q. And how long did that last, that condition? A. Well, for three or four days I had soreness, and they gave me therapy, sending me to a therapist. It was more of a massage. I don't know what all they did to me. I know every time they moved me I was unhappy. Q. How long did that condition last? A. I was still limping when I left the hospital, and I had pain in my back and in the back of my head. Q. Now, has that condition carried over to this day? A. No. I don't have — I have a restriction, or when I turn my head or neck on this side I can notice it, or I can notice it if I sit in a chair, or bend over in the back. I can still notice that, even up in the back, and I have headaches. I don't have them often, which I feel to be the same thing that I had then. When I do, they are disabling."

The statement from Providence Hospital showed: Room Service, 8 days, $148; Medicine, $3.85; Laboratory, $7; X ray, $35; Physiotherapy, $9; Total, $203.35 (Items total $202.85.)

The bills for repairs to the car amounted to $222.20. The garage operator testified that the frame was bent, the trunk was pushed in, and the bumper was not usable again.

Dr. Vernon Lundmark testified that Mrs. Powell was brought to his office and that he sent her to the hospital; that the X-ray studies revealed nothing notable at the time, although she had many symptoms and spasms and tenderness and limitation of movement in her neck and shoulders;

that while in the hospital she was treated by bed rest, sedation for pain and discomfort; and that the last three days she was sent down to physical therapy for massage and other forms of physiotherapy. He testified concerning his diagnosis on original examination:

"A. I thought that she had had a moderately severe servical dorsal sprain of the neck which is commonly called a whiplash injury of the neck. Other than that I could make no other — I could find no other objective pathology."

He examined her shortly before the trial and as to that examination, testified:

"A. The range of movement of her neck I found to be within normal limits. The lateral rotation of her neck and— the lateral rotation of her neck in flexion and extension were within normal range. There was no tenderness and no muscle spasm. The examination of the spine from the base of the neck to the lumbar region, which is to the base of the pelvis, was not remarkable. There was some deep tenderness over the spines of the 6th and 7th vertebrae of the dorsal spine."

Mr. Mason testified that, after they drove across the intersection and parked, he asked her how she felt and she replied, "All right." He called the bakery and testified as to his reasons for so doing:

"A. The reason I called the bakery in the first place was the fact that the way Mrs. Powell was acting I knew I was probably due for some trouble because immediately I could see that she was. — I thought was doing a very poor job of acting about how badly she was hurt for no harder than I hit her; so I wanted somebody from the bakery to see just exactly how she was acting; so I called the bakery, and to further my own mind about it, that is the reason for me leaving the scene before the mechanic came, I wanted to get up around the block and park my truck, which I did, and then I walked back, and as I approached the intersection where I could look back, which is only about half a block away, I looked down and could see her car. She was still sitting in her car but up looking around, looking for probably her sister-in-law to come, and at that time, why, I thought, well, I will just walk on back there and leave my truck where it is at and walk back and wait for the boys from the bakery to come. So I walked on down there, and

just immediately, as soon as she saw me approaching on foot, why she went into her slump of real bad feeling and head hanging and what not."

After the accident, Mrs. Powell moved to Tennessee, and shortly before the trial, at the request of defendant, she was examined at Chattanooga by Dr. Robert C. Robertson, a bone and joint surgeon. By stipulation, his four-page report was read to the jury. In his opinion, as a result of the examination, there was no functional disability of the cervical region. We quote a portion of the report:

"Walks, assumes erect and recumbent position and moves about on examining table all without apparent pain. Does not guard active or passive motions of neck or upper extremities and does not hold head and neck in any one given position. The neck, shoulders and both upper extremities are grossly normal in appearance except for mild atrophy of left scapular muscles."

We do not agree with the trial judge that any amount over $500, including automobile damage, is outrageous, or that the average jury would have found either a nominal amount for plaintiff, or a verdict for defendant. The plaintiff proved, without objection, the following out-of-pocket expenses, each charge testified to as having been reasonable: Providence Hospital, $203.35; repairs to automobile, $222.20; Dr. Lundmark, $75; X ray, $20; electroencephalogram, $75; X ray, $20; Total, $615.55.

In these days of large verdicts, the verdict of three thousand dollars is modest, to say the least. The damage to the rear of Mrs. Powell's car would justify the jury in believing her testimony that her head was thrown back by the force of the collision. A person does not generally spend eight days in a hospital after an automobile accident without experiencing some pain and suffering, and without having been injured to some extent.

These considerations, coupled with Dr. Lundmark's objective findings upon his original examination, justify the jury's verdict. When we consider the fact that the members of the jury, including five without prior jury experience, awarded only three thousand dollars when $16,028.35 was

asked, it would seem that they not only followed the court's instruction that they were "the exclusive judges of the facts and the weight to be given to the testimony of any witness," but that they were able to observe "many little clues and symptoms" about the "appearance and demeanor" of Mrs. Powell which "were the sort commonly considered in discriminating between the true and the false."

It is our opinion that the verdict was not against the weight of the evidence, was not a miscarriage of justice, but rather, was the result of calm deliberation, keen discrimination, and good judgment on the part of the jury.

■ The complaint was verified by Charles Powell and not by Mrs. Powell. The divorce decree approved a stipulation between the parties assigning to Charles L. Powell a one-half interest in this cause of action. Respondent cross-appeals, contending that the assignment should be treated as a nullity, and that therefore the complaint was not properly verified. However, at no time did respondent move to strike the complaint. See RCW 4.36.220 and also, Rule on Appeal 63, 34A Wn. (2d) 65. In *Smith v. Newell*, 32 Wash. 369, 73 Pac. 369, we said:

"It is next said that the verification to the complaint is insufficient, and that the court erred in refusing to quash the proceedings for that reason. But if the objection were well taken, it is not available here. The defect complained of is one that does not affect the merits of the controversy, and was capable of being amended in the trial court. In such cases this court is required by statute to 'consider all amendments which could have been made as made,' and decide the cause upon the merits. Bal. Code § 6535. It will therefore treat defects of this kind as amended, or, what is better, perhaps, disregard them."

We find no merit in respondent's cross-appeal.

The order granting a new trial is reversed, and the cause remanded with direction to enter judgment on the verdict.

DONWORTH, FINLEY, ROSELLINI, and FOSTER, JJ., concur.